IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| STACY ALLEN BLATT, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| v. | ) | Civ. Case No. 06-0015-CV-W-NKL |
| | ) | Crim. Case No. 00-00266-CR-W-NKL |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**ORDER**

Pending before the Court is Stacy Blatt's ("Blatt") Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 [Doc. # 1] and his two Motions for Summary Judgment related to his underlying Motion for habeas relief [Docs. ## 8 and 13]. The Court has considered the arguments presented in all three Motions and it denies them based on the reasons set forth below.

Blatt also filed a Motion for Subpoena Duces Tecum [Doc. # 15], wherein he requested his medical records. Blatt subsequently filed a "Status Report" indicating that he had received the records. Thus, the Court will deny Blatt's Motion for Subpoena Duces Tecum [Doc. # 15] as moot.

**I.    Background**

   **A.    Charges and Guilty Plea**

The Government indicted Blatt on June 15, 2000, on two Counts: conspiracy to manufacture and distribute methamphetamine in an amount of 100 grams or more (Count

1

I), and attempt to manufacture five or more grams of methamphetamine (Count II). After being indicted, the Court appointed Cheryl Pilate ("Pilate") to represent Blatt.

On May 10, 2001, Blatt pleaded guilty to the conspiracy charge contained in Count I. The statutory minimum for Count I was ten years' imprisonment. As part of his plea agreement, Blatt stated that he was satisfied with his counsel, and that he was accountable for 150 to 500 grams of methamphetamine.

**B.     The PSR**

The Probation Office prepared Blatt's Presentence Investigation Report ("PSR"). The PSR assessed Blatt with a base offense level of 34, pursuant to section 2D1.1 of the federal sentencing guidelines ("the Guidelines"). Blatt then received a 3-level credit under section 3E1.1 for his acceptance of responsibility and his total offense level was 31.

The PSR also assessed five criminal history points to Blatt, which equated to a criminal history category of III. The five points consisted of one point for street racing, one point for careless driving, one point for driving under the influence, and two points for committing the underlying crime while on probation for driving under the influence. According to the Guidelines, the corresponding sentencing range for a defendant with a base offense level of 31 and a criminal history category of III was 135-168 months' imprisonment.

The PSR discussed Blatt's depression. Blatt stated that his family has a long history of depression and that he used illicit drugs to try to self-medicate his own depression.

2

Pilate filed objections to the PSR on behalf of Blatt. She argued that Blatt's previous convictions for street racing and careless driving were more akin to a speeding conviction, which is never counted in the calculation of a criminal history level, because they were minor offenses. Had the Court adopted Pilate's argument, Blatt's criminal history points would have been reduced to three, which equated to a criminal history category of II. With a base offense level of 31 and a criminal history category of II, Blatt's sentencing range under the Guidelines would have been 121-151 months of imprisonment.

In response to the PSR, Pilate also stated that she intended to argue for downward departure due to Blatt's substantial assistance to the Government and because of his mental and emotional conditions.

### C. Blatt's Sentencing Memorandum

Pilate filed a Sentencing Memorandum wherein she asserted that Blatt's criminal history was overstated in the PSR because of the minor nature of his traffic offenses. Additionally, Pilate argued that Blatt should receive the benefit of a downward departure because he assisted the Government and based on his mental depression. Pilate also argued that the combination of Blatt's circumstances warranted a downward departure and those circumstances included his mental condition, family history, relatively minor criminal history, and his attempts to aid the Government.

Attached to her Sentencing Memorandum Pilate filed nine letters that supported Blatt. The letters were from Blatt's family members, a prison minister, long-time

3

acquaintances of Blatt's, and Blatt's former employer.

### D. Sentencing

On September 19, 2001, the Court conducted a sentencing hearing for Blatt. Pilate successfully persuaded the Court to disallow the criminal history point based on street racing, but she was unsuccessful on her other arguments.

The adjusted criminal history points attributable to Blatt were four, which still equated with a criminal history category of III. His offense level of 31 did not change. Thus, the sentencing outlook for Blatt did not substantially change as the range continued to be 135-168 months of imprisonment. The Court sentenced Blatt to 135 months of imprisonment.

### E. The Pending Motion

Blatt did not appeal his sentence and he has filed no other actions prior to submitting the pending Motion. Blatt filed the pending Motion on December 22, 2005, wherein he raised six separate grounds for relief as follows: (1) Pilate provided ineffective assistance of counsel; (2) he suffered from diminished mental capacity; (3) the Court over-determined his criminal history; (4) the Court over-determined the offense level; (5) he was entitled to a downward departure for his "exceptional" acceptance of responsibility; and (6) he was entitled to a downward departure based on a combination of factors. Interspersed with his grounds for relief is Blatt's argument that the Supreme Court's opinion in *United States v. Booker*, 543 U.S. 220 (2005), provides him relief.

## II. Evidentiary Hearing

On a motion to vacate, a movant is entitled to an evidentiary hearing when the facts alleged, if true, would entitle him to relief. *Payne v. United States*, 78 F.3d 343 (8th Cir. 1996) (citations omitted). However, a claim may be dismissed without an evidentiary hearing if the claim is inadequate on its face. *Id*. Moreover, a district court need not hold an evidentiary hearing in a section 2255 case when the files and records conclusively show that the movant is not entitled to relief. *See Bradshaw v. United States*, 153 F.3d 704 (8th Cir. 1998). After reviewing the records and files, the Court concludes that all of Blatt's claims can be fully and fairly evaluated on the existing record and no evidentiary hearing is necessary.

### III. Discussion

#### A. Blatt's Petition Is Not Timely

Blatt's habeas action is not timely. A habeas motion brought under section 2255 must be filed within one year of the date that the conviction became final. *See* 28 U.S.C. § 2255(1); *United States v. McIntosh*, 332 F.3d 550 (8th Cir. 2003). Because Blatt did not file a direct appeal of his underlying conviction, his conviction became final when the time period for filing his notice of appeal expired, which occurred in Fall 2001. Blatt did not file his pending Motion until December 2005--over four years after the date that his conviction became final.

In *United States v. Martin*, 408 F.3d 1089 (8th Cir. 2005), the Eighth Circuit applied equitable tolling to the one-year statute of limitations for actions filed under section 2255. The court stated that equitable tolling "should only apply where the

5

petitioner or movant has demonstrated diligence in pursuing the matter" and that it is appropriate where "'extraordinary circumstances' beyond a prisoner's control prevent timely filing." *Id.* at 1093-95 (citation omitted).

Blatt's depression does not warrant equitable tolling of the one-year deadline. Blatt submitted his medical records from the Bureau of Prisons. In December 2001, Blatt was incarcerated at a facility in South Dakota and he was given an initial health review. Blatt reported experiencing depression before, but he denied ever taking medicine or experiencing suicidal thoughts. *See* Doc. # 17 at Exhibits. Blatt did not seek out additional treatment for his depression until September 2002--one year after he was sentenced. *Id.* Nothing in these records suggests that Blatt was incapacitated in late 2001 through 2002 so as to prevent him from filing his habeas.

Although Blatt has presented evidence that his thyroid condition was diagnosed in late 2002, there is no basis for believing that it debilitated him during late 2001 and 2002 and prevented him from filing his section 2255 action. Similarly, there is no evidence that his "mid-life crisis" prevented him from timely filing this action.

Nothing in the record supports Blatt's contention that he was unable to pursue his habeas filing during the pendency of the one-year statute of limitations. There is no evidence that Blatt "demonstrated diligence in pursuing the matter" and the Court will deny his grounds for relief as untimely. *Martin*, 408 F.3d at 1095.

### B. Blatt's *Booker* Argument

To the extent that Blatt argues that *Booker* provides him with relief, he is incorrect.

Blatt argues that *Booker* applies to him because he "falls within the one year 'time limit' that ends January 12, 2006." *See* Motion [Doc. # 1] at p. 2, ¶ 3. Under section 2255, the one-year statute of limitations is extended and does not begin to run until "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." 28 U.S.C. § 2255(3).

It appears that Blatt is arguing that his habeas action is timely because it was filed within one year of the date that the Supreme Court issued its opinion in *Booker*. However, *Booker* has not been made retroactive by the Supreme Court and the Eighth Circuit has explicitly held it does not apply retroactively to cases on collateral review. *See Never Misses A Shot v. United States*, 413 F.3d 781, 783-84 (8th Cir. 2005). Therefore, the Supreme Court's issuance of *Booker* did not act as a tolling mechanism for the one-year statute of limitations for habeas actions because it does not apply retroactively.

Even assuming *Booker* did apply retroactively so as to suspend the one-year statute of limitations, it would provide no relief for Blatt because he admitted the underlying offense in his plea and he did not incur any sentencing enhancements based on uncharged conduct. Therefore, Blatt's *Booker* argument must fail.

**IV.     Conclusion**

Accordingly, it is hereby

(1)     ORDERED that Blatt's Motion to Vacate, Set Aside or Correct Sentence

7

[Doc. # 1] is DENIED;

(2) ORDERED that Blatt's Motions for Summary Judgment [Docs. ## 8 and 13] are DENIED; and

(3) ORDERED that Blatt's Motion for Subpoena Duces Tecum [Doc. # 15] is DENIED as moot.

                                              s/ Nanette K. Laughrey
                                              NANETTE K. LAUGHREY
                                              United States District Judge

DATE: May 16, 2006
Kansas City, Missouri